UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| JESUS VELEZ, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. G-09-241 |
| § | |
| LAREDO OFFSHORE SERVICES, INC., *et al*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

Pending before the court is Plaintiff Jesus Velez's and Intervenor Edwin Canas' Motion to Remand (Doc. # 15). Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that Plaintiff's and Intervenor's Motion to Remand should be denied.

**I.    Background**

This is a personal injury case filed in state court in County Court at Law No. 3, Galveston County, Texas, brought by Texas resident, Jesus Velez ("Velez"), in March 2009. In May 2009, Intervenor Edwin Canas ("Canas"), a Texas resident, filed a petition in intervention. The Plaintiff and Intervenor sued their employer, Defendant Laredo Construction, Inc. ("Laredo Construction"), as well as Defendants The Grand, Ltd. ("The Grand") and Laredo Offshore Services, Inc. ("Laredo Offshore"). Plaintiff and Intervenor claim that they were working for Defendant Laredo Construction as welders/fitters when they were injured in an explosion on the Mr. Two Hooks on July 9, 2008, while the vessel was dry docked in Galveston, Texas. The Mr. Two Hooks is a derrick barge owned by Defendant The Grand; the vessel is operated by Defendant Laredo Offshore.

In September 2009, the Plaintiff and Intervenor filed amended petitions, dismissing Laredo Construction, a Texas corporation, as a party. Thereafter, on October 7, 2009, Defendant The Grand removed the action to this court predicated on diversity jurisdiction under 28 U.S.C. § 1332(a). The Grand argues that diversity exists because both of the remaining Defendants (*i.e.*, The Grand and Laredo Offshore) are incorporated in Louisiana and maintain their principal places of business in Louisiana. On November 6, 2009, the Plaintiff and the Intervenor filed a motion to remand, asserting that Defendants' activities are far flung and that Defendants have "nerve centers" in Texas establishing Texas as their principal places of business. As such, Plaintiff and Intervenor argue that there is no complete diversity of citizenship and this court lacks subject matter jurisdiction.

## II.  Analysis

Federal courts are authorized to exercise subject matter jurisdiction based on the existence of federal law or the diverse citizenship of the parties and an amount in controversy in excess of $75,000.00. *See* 28 U.S.C. § 1331, 1332; *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996). In order to determine whether jurisdiction exists in a removed action, the claims set forth in the state court petition are examined as of the time of removal. *See Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Subject matter jurisdiction exists only if there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a); *Caterpillar, Inc.*, 519 U.S. at 68. Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *See Caterpillar, Inc.*, 519 U.S. at 68; *see also Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003), *cert. denied*, 541 U.S. 1073 (2004). Furthermore, removal is appropriate only if none of the

parties properly joined and served as a defendant is a citizen of the state in which the action is brought. *See* 28 U.S.C. § 1441(b).

For purposes of diversity jurisdiction, a corporation is a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The determination of a corporation's principal place of business is a fact-intensive inquiry that can only be made after considering the totality of the corporate existence. *See Teal Energy USA, Inc. v. GT, Inc.*, 369 F.3d 873, 879 (5th Cir. 2004). The court determines a corporation's principal place of business by applying the "total activity" test, which requires consideration of two "focal points:" the location of the corporation's "nerve center" and its "place of activity." *See Teal Energy USA, Inc.*, 369 F.3d at 876 (citing *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 406 (5th Cir. 1987)). The court must examine the totality of the facts, including the corporation's organization and the nature of its activities, to determine which of these focal points predominates. *See id*. Three general principles guide the "total activity" inquiry.

> (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more significant, but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance.

*J.A. Olson Co.*, 818 F.2d at 411 (internal citations omitted); *accord Teal Energy USA, Inc.*, 369 F.3d at 876.

Here, it is undisputed that Plaintiff and Intervenor are Texas citizens. The situs of Defendants' principal places of business for purposes of section 1332(c) is determinative of whether the court can exercise diversity jurisdiction over this case; if The Grand and Laredo Offshore's principal place of business is Louisiana, the requisite diversity is present, but if The

Grand or Laredo Offshore's principal place of business is Texas, the case must be dismissed for lack of jurisdiction.

### A. The Laredo Group

The Laredo Group is comprised of three companies: Laredo Construction, The Grand, and Laredo Offshore. These are family businesses owned by the Springob family of Sugarland, Texas. The father, mother, son, and daughter (Bob, Waltraud, Tarn, and Nadja) are officers of each of the companies that comprise the Laredo Group. The Laredo Group office is located in Stafford, Texas.

### B. The Grand & Laredo Offshore

The Plaintiff and Intervenor argue that Defendants' operations are far flung and that its nerve center and principal place of business are in Stafford, Texas. To support this argument, the Plaintiff and Intervenor assert that the Laredo Group is a closely held, family-run company that is based in Stafford, Texas. According to the Plaintiff and Intervenor, all major decisions concerning Defendants are made out of the office in Stafford, Texas. The Defendants dispute this contention, maintaining that the Defendants are corporate citizens of the state of Louisiana.

#### 1. Defendants' Operations

As an initial matter, the court does not find that Defendants' operations are "far flung." Instead, the evidence establishes that Defendants are engaged in uniform activities. The Grand is a Louisiana corporation that has an office in Belle Chasse, Louisiana. The Grand's core activity is owning and leasing vessels. It owns eight vessels—four lift boats and four barges (one of these four barges is the derrick barge, Mr. Two Hooks). The four barges, when in operation, are operated by charterers. The Grand employs approximately 42 seaman, all of whom work exclusively on the four lift boats.

Likewise, Laredo Offshore is a Louisiana corporation with an office in Belle Chasse, Louisiana. Laredo Offshore is engaged in only one activity—operating four lift boats (not barges) owned by The Grand to service the offshore oil and gas industry. Laredo Offshore has eight employees. Six employees are located in Belle Chasse, Louisiana and two employees are located in Galveston, Texas at the Laredo Offshore fabrication yard on Galveston's Pelican Island. Although Laredo Offshore may have some work outside of Louisiana, it provides a uniform service.

Because the court does not find that the Defendants are engaged in far flung and varied activities, the Plaintiff and the Intervenor's contention that Defendants' principal place of business is Stafford, Texas, under the nerve center test is inapposite. After considering the totality of the circumstances surrounding Defendants' activities and corporate structure, the court finds that the Defendants' business operations are not "far flung" and, therefore, the "place of activities" test predominates in evaluating the principal place of business in this case.

    **2.**    **Total Activities**

        **a.**    **The Grand**

In addition to being incorporated and having an office in Belle Chasse, Louisiana, The Grand pays franchise taxes, state and parish property taxes, and vessel taxes in Louisiana. The Grand's vessel documentation is maintained in Louisiana. The Grand reports quarterly safety and OSHA information to the Louisiana Workforce Commission. The United States Coast Guard sends all inspections, documentations, and mariner notices to The Grand's office in Belle Chasse, Louisiana. EPA vessel discharge permits for the lift boats are maintained and stored in Belle Chasse, Louisiana. NOAA required beacon registrations for The Grand's vessels are

handled in Belle Chasse.  FCC ship and radio licenses are applied for and maintained in Belle Chasse.

Moreover, as set forth above, The Grand owns a total of eight vessels consisting of four lift boats and four barges.  In 2007 and 2008, use of the four barges accounted only for 2% and 3%, respectively, of The Grand's annual revenue, while revenue generated by the lift boats accounted for 98% and 97%, respectively.  The 42 crewman employed by The Grand live in several states, including Louisiana, Florida, and Mississippi.  Generally, they report to a crew change in Louisiana.  In 2007, The Grand vessels conducted Louisiana crew changes for 591 days worked and conducted crew changes from Texas for only 159 days worked.  The Grand's employees pay Louisiana state taxes and The Grand pays Louisiana employment taxes.

Finally, The Grand is a member of the Offshore Marine Service Association that is based out of Harahan, Louisiana.  To fill crew vacancies, The Grand uses personnel service companies located in Louisiana.  The Grand sends its employees to school in Louisiana for certification purposes.  Physicals and/or drug screens for employees of The Grand are conducted in Louisiana.  Finally, insurance is purchased and administered in Louisiana.

### b. <u>Laredo Offshore</u>

Similarly, Laredo Offshore is incorporated in Louisiana with an office in Belle Chasse, Louisiana.  Laredo Offshore operates lift boats on behalf of its clients.  Laredo Offshore employs eight individuals, six of whom are based in Belle Chasse, Louisiana, and two of whom are stationed in Galveston.  The two employees in Galveston are a port captain and a mechanic.  Laredo Offshore's general manager oversees all operations and works in the Belle Chasse office.  The Laredo Offshore operations manager, who is in the Belle Chasse office, handles timesheets and payroll verification, expenditure tracking, invoicing, and crew changing.

The management at the Belle Chasse office recruits, hires, and fires vessel crewmembers, determines crewmember wages, manages crewmember schedules, and maintains crewmember documentation. Additionally, to accommodate crew changes, Laredo Offshore provides temporary housing at its Belle Chasse office, which is equipped with bathrooms, a refrigerator, food/supplies, and sleeping quarters. The vehicles owned by Laredo Offshore to provide transportation during crew changes are all titled and maintained in Louisiana. Laredo Offshore also arranges for the maintenance of vessel equipment in Louisiana and maintains inventory in that state.

The Laredo Offshore sales and marketing representative works primarily in the Belle Chasse office. The purchasing manager that buys all lift boat supplies and groceries works in the Belle Chasse office. Laredo Offshore's senior port captain—who assists in maintaining the vessels, addressing crew demands, evaluating vessel performance, and functioning as an immediate superior of the Galveston-based port captain and mechanic—works in the Belle Chasse office. Finally, although Laredo Offshore has a bank account in Texas, it maintains its primary and petty cash accounts in Louisiana. Laredo Offshore merely hired Laredo Construction to perform secretarial, bookkeeping, and other record keeping on its behalf.

In sum, it is apparent that the Defendants' activities in Louisiana clearly exceed their activities in Texas. Although the court recognizes that the Defendants' corporate officers reside in Texas and may make certain business decisions from Texas, the evidence reflects that the crux of the Defendants' operations are in Louisiana. As such, less weight was given to the location of the Defendants' executive offices. Thus, after balancing all of the relevant factors under the total activities test, the court finds that the Defendants' principal place of business is Belle Chasse, Louisiana.

Consequently, complete diversity exists in this case because Plaintiff/Intervenor and Defendants are not citizens of the same state. The Plaintiff and Intervenor are Texas citizens; Defendants have Louisiana corporate citizenship. Moreover, because Plaintiff seeks in excess of $75,000.00 in damages, the amount in controversy exceeds the statutorily required minimum. In addition, Defendants are not citizens of Texas, the state in which suit was brought. Therefore, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, and remand is not appropriate.

### III.   Conclusion

Accordingly, Plaintiff's and Intervenor's Motion to Remand (Doc. # 15) is **DENIED**.

SIGNED at Houston, Texas this 2nd day of February, 2010.

_____
Kenneth M. Hoyt
United States District Judge