UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JESUS VELEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-241 |
| | § | |
| LAREDO OFFSHORE SERVICES, INC., *et al*, | § § | |
| | § | |
| Defendants. | § § | |

## MEMORANDUM AND ORDER

### I.     INTRODUCTION

Before the Court are the separate motions for summary judgment filed by the defendants Laredo Offshore Services, Inc. (Document No. 52), and The Grand, LTD (Document Nos. 50 and 51). In The Grand's instance, its motions for summary judgment address separately the plaintiff Jesus Velez's and intervenor Edwin Canas's claims under the Longshore and Harbor Workers Compensation Act. *See* 33 U.S.C.A. § 905(b).

The plaintiff and intervenor, Jesus Velez and Edwin Canas, respectively, filed a joint response to The Grand's separate motions for summary judgment (Document No. 54). Separate reply and sur-replies are on file for the plaintiff and intervenor and The Grand. *See* [Documents 56, 57 and 58]. After a careful review of the relevant documents, the Court determines that the Laredo Offshore and The Grand's motions for summary judgment should be granted.

### II.     FACTUAL BACKGROUND

The plaintiff and intervenor are/were employees of Laredo Construction, Inc., [LCI], one of the named defendants in this case. The facts governing their claim for injuries are relatively undisputed. They assert that on or about April of 2008, the vessel made the subject of this suit,

the MR. 2 HUOKs arrived at Bludworth Shipyard and was placed in drydock for repairs. The vessel, a derrick barge, is owned by The Grand and was turned over to LCI on that occasion for repairs. According to the plaintiff's testimony, he and the intervenor were assigned the responsibility to repair and refurbish the vessel. As a part of the process, the plaintiff and intervenor were assigned to pressure test Tank P1. The testing exercise required that the tank be sealed with a hatch cover, and filled with air. After the tank is pumped with air to capacity, soapy water was applied around the seal to detect leaks. The plaintiff and intervenor noticed an air leak around the perimeter of the hatch and the intervenor attempted to tighten the hatch cover. As the intervenor engaged in the tightening process, the hatch came off, while still under pressure, causing the accident that is the subject of this suit. The plaintiff and intervenor brought this suit as a result.

### III.   THE PARTIES CONTENTIONS

*A.   Laredo Offshore's Contentions*

Laredo Offshore contends that it is entitled to summary judgment against the plaintiff and intervenor because (a) it was not the owner or operator of the vessel, and (b) it did not breach any duty that a vessel owner might owe. Therefore, Laredo Offshore argues that the plaintiff and intervenor cannot maintain a cause of action for vessel negligence against it based on any duty owed by a vessel owner.

*B.   The Grand's Contentions*

The Grand admits that it was the owner of the vessel on the occasion. Nevertheless, it argues that it, too, owed no duty to the plaintiff and intervenor because, at the time of the accident, the vessel had been turned over to LCI, the plaintiff and intervenor's employer. Moreover, The Grand argues, it owed no duty to inspect or supervise the repair operations and,

therefore, owed no duty to intervene in the repair operations. As well, The Grand asserts, the required repairs were the cause of the accident and, in that respect, it had not duty to deliver its vessel in a "hazard-free" condition. Therefore, The Grand asserts that it too is entitled to a summary judgment against the plaintiff and the intervenor.

### C. *The Plaintiff and Intervenor's Contentions*

The plaintiff and intervenor contend that The Grand violated its "turn-over" duty in that the vessel contained a dangerous hatch cover. Essentially, the plaintiff and intervenor dispute The Grand's assertion and the testimony of Laredo Construction's facilities manager that the scope of repairs covered replacement of the hatch cover that failed. Therefore, the plaintiff and intervenor argue that, at least, there is a disputed fact question regarding the scope of repairs to be performed. The plaintiff and intervenor rely on the fact that neither The Grand nor Laredo Construction possesses documents that describe the scope of repairs to be done on the vessel. Moreover, the plaintiff and intervenor assert, that there are no documents showing that the hatch covers were being replaced or repaired. The plaintiff and intervenor also point to the testimony of Alberto Sanchez that the hatch cover that injured the plaintiff and intervenor was the original hatch cover. Finally, the plaintiff and intervenor argue that the hatch cover presented a dangerous condition that caused the parties' injuries.

### IV. STANDARD OF REVIEW - SUMMARY JUDGMENT

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. An issue is "genuine" if the evidence is

sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*   If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial." Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V.    ANALYSIS AND DISCUSSION

The plaintiff and intervenor contend that the vessel owner, The Grand, violated its turn-over duty to them when it failed to inform them that the hatch cover that failed was, in fact, defective.  The Grand disputes this contention and argues that it had no duty because the

defective hatch cover, if in fact it was, was due for repair and, therefore, within the scope of repairs.

The Supreme Court has interpreted 33 U.S.C. § 905(b) as placing a duty, with respect to the condition of the vessel, on the shipowner to warn the stevedore of hidden danger which would have been known to him [owner] in the exercise of reasonable cause.  *See Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 101 S. Ct. 1614 (1981).  The owner breaches that duty if his negligence causes injury.  However, this duty does not extend to supervision or inspection of the vessel to discover dangerous conditions within the confines of the cargo operations.  *See Id.; see also Lemon v. Bank Lines, LTD*, 656 F.2d 110, 115 (5th Cir. 1981) (internal citations omitted).  More analogous to the case at bar is *Stass v. American Commercial Lines, Inc.*, 720 F.2d 879 (5th Cir. 1983).  The Fifth Circuit stated that:

> In the context of repair operations, however, a vessel owners duty to the shipyard and its workers is subtly altered.  The Courts have long recognized that the vessel owner has no duty to deliver his ship to the shipyard in a hazard-free condition when the requested repairs would remedy the hazards which caused the injury.

The court's reasoning is that where the owner has no control over the ship or the repairs and the work of repair, in effect, creates the danger that makes the vessel or location unsafe, the owner is not liable.  *See Id.* at 883.

In the case at bar, the Facility Manager and the Superintendent for LCI testified that LCI was commissioned to repair the "P1 tanks bottom plate and bow rake, and replace hatch covers on the vessel."  The Facility Manager testified that after all repairs, the plaintiff and intervenor were directed to pressure test the P1 tanks.  The test required that the plaintiff and intervenor first inspect each tank for debris.  Once cleared, they were to make sure that they have a good gasket seal.  This process required putting the hatch on or down and tightening it before filling the tank

with air.  If the tank does not hold pressure in accordance with ABS standards, then they were required to depressurize the tank and repair the necessary leaks, and begin the process again.

The plaintiff and intervenor argue that the hatch covers were not replaced, as stated by the Facility Manager in other testimony.  They proffer the statement of a worker, Alberto Sanchez, that "nobody repaired the failed hatch cover until after the incident."  They also proffer a statement from Juan Sanceda that the "hatch cover involved in the incident was a 'metallic brown color, not red'" as testified to by the Facility Manager.  Finally, the plaintiff and intervenor offered the opinions of a marine surveyor and naval architect that "the incident occurred when the rusted hatch cover failed."  On the bases of these statements and opinions the plaintiff and intervenor assert that a material disputed fact issue exists in this case.  The Court is of the opinion that it does not.

It is not material to this case, in particular, that there are disputes between the witness concerning the details of this event.  It is material that the vessel was in drydock undergoing repairs.  It is also material that the scope of the repair work included pressure testing various tanks including the P1 tank.  Whether the hatch cover on the P1 tank had been replaced or not, it was within the scope of work for which repairs were commissioned.  Certainly pressure testing the P1 tank would require the hatch cover to pass inspection, whether replaced or not.

The Court finds, as a matter of law, that pressure testing on the P1 tank was included in the scope of work repairs to the gasket seal and/or hatch cover.  In this regard, the requested or required repairs [leaking tank] would remedy the hazards that caused the injury.  *See Stass*, 720 F.2d at 844.  Moreover, The Grand had no control over the vessel or the repairs and it was the work [repairs] to the vessel that created the danger that made the vessel unsafe.  *Id*. at 833.

## VI.     CONCLUSION

The plaintiff and intervenor have failed to create a disputed fact issue on a material point that defeats Laredo Offshore's motion for summary judgment. Because it was not an owner of the vessel and owed no duty to the employees of LCI, summary judgment is Granted. Summary judgment is also Granted on behalf of The Grand, based on the findings and conclusions that it owed no turn-over duty to the plaintiff or intervenor.

It is so Ordered.

SIGNED at Houston, Texas this 13th day of July, 2010.

Kenneth M. Hoyt
United States District Judge